UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT B. BERGDAHL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 21-418 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

The plaintiff, Robert B. Bergdahl, brought this civil action against the defendant, the United States of America, seeking collateral review of his conviction by a general court-martial, see Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl.") at 1, ECF No. 3, pursuant to the Due Process Clause of the Fifth Amendment of the United States Constitution, see id. ¶ 1; the Rules for Courts-Martial ("R.C.M.") 104(a)(1), 902, see id.; and "Rule 2.11 of the binding Rules of Judicial Conduct for Army Trial and Appellate Judges[,]" id.  On July 25, 2023, the Court granted in part and denied in part the defendant's motion to dismiss and granted in part and denied in part the plaintiff's motion for summary judgment.  See Bergdahl v. United States, 683 F. Supp. 3d 24, 35 (D.D.C. 2023) ("July 25, 2023 Memorandum Opinion"); Order at 1 (July 25, 2023), ECF No. 26.  Currently pending before the Court are (1) the Defendant's Motion to Alter or Amend Judgment ("Def.'s Mot." or the "defendant's motion"), ECF No. 27, and (2) The Plaintiff's Cross-Motion to Alter or Amend the Judgment ("Pl.'s Mot." or the "plaintiff's motion"), ECF No. 28.  Upon careful consideration of the parties' submissions,[1] the Court

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Opposition to the Plaintiff's Cross-Motion to Alter or Amend the Judgment ("Def.'s Opp'n"), ECF
(continued . . .)

concludes for the following reasons that it must grant in part and deny in part the defendant's motion for reconsideration and deny the plaintiff's cross-motion for reconsideration.

## I.     BACKGROUND

The Court previously discussed the factual background and legal framework pertinent to this case in its July 25, 2023 Memorandum Opinion, see Bergdahl, 683 F. Supp. 3d at 35–45, and therefore will not reiterate those facts and authorities again here.  The Court will, however, set forth the procedural background which is pertinent to the resolution of the pending motions for reconsideration.

In the Court's July 25, 2023 Memorandum Opinion, the Court granted in part and denied in part the defendant's motion to dismiss and granted in part and denied in part the plaintiff's motion for summary judgment.  See id. at 71.  First, the Court addressed the plaintiff's unlawful command influence claims and found "no reason to disturb [the military courts'] decisions on the merits of [these] claim[s]." Id. at 60 (quoting Scott v. United States, 351 F. Supp. 3d 1, 8 (D.D.C. 2018)).  However, in turning to the plaintiff's second claim—viz., "whether the military judge had a duty to disclose that he had applied for a lucrative job with the Department of Justice[,]" Am. Compl. at 1—the Court concluded that "based upon the totality of the circumstances, [ ] 'a reasonable person, knowing the relevant facts, would expect that [the military judge in this case] knew of circumstances creating an appearance of partiality[,]' and because 'in [this] proceeding[] . . . [ ] th[e] military judge's impartiality might reasonably be questioned[,]' he should have disclosed his job application as a potential ground for his disqualification." Bergdahl, 683 F. Supp. 3d at 71 (second, third, fourth, sixth, seventh, and

---

(. . . continued)
No. 32; (2) the Plaintiff's Response to Defendant's Motion to Alter or Amend ("Pl.'s Opp'n"), ECF No. 33; (3) the Defendant's Reply in Support of its Motion to Alter or Amend Judgment ("Def.'s Reply"), ECF No. 35; and (4) the Plaintiff's Reply to Defendant's Response to Cross-Motion to Alter or Amend ("Pl.'s Reply"), ECF No. 36.

eight alterations in original) (omission in original) (internal citations omitted) (first quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 850 (1988); and then quoting R.C.M. 902(a)).  In reaching this conclusion, the Court noted that "the military judge in this case submitted a writing sample along with his application, consisting of an order in which he denied the plaintiff's unlawful-command-influence motion which was based upon former President [Donald J.] Trump's statements [regarding Bergdahl], and [then] ruled against the plaintiff—both actions that a reasonable person might view as serving the president's interests in this case and thus, 'creating the appearance of impropriety[.]'"  Id. at 70–71 (quoting Liljeberg, 486 U.S. at 858).  Moreover, the Court stated that "the military judge's decision not to disclose his application for the immigration judge position, coupled with his misleading affirmative statements regarding his impending retirement, also could lead 'a reasonable observer [ ] [to] wonder whether the judge had done something worth concealing.'"  Id. at 71 (alterations in original) (quoting In re Al-Nashiri, 921 F.3d 224, 237 (D.C. Cir 2019)).  Accordingly, the Court vacated "all orders and rulings issued by the military judge who presided over the plaintiff's court-martial as of October 16, 2017, and thereafter—which was the date when that military judge submitted his employment application for an immigration judge position—and 'further vacate[d] all decisions issued by [the appellate military courts] reviewing such orders [and rulings].'"  Id. (second and third alterations in original) (internal citations omitted) (quoting Al-Nashiri, 921 F.3d at 241).  Consequently, the Court held that "the judgment of the military judge regarding the plaintiff's court-martial [was] rendered void."  Id.

On August 22, 2023, the defendant filed its motion for reconsideration of the Court's July 25, 2023 Memorandum Opinion and Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  See Def.'s Mot. at 1.  The plaintiff then filed his opposition on September 15,

3

2023, see Pl.'s Opp'n at 1, and the defendant filed its reply in support of its motion on September 22, 2023, see Def.'s Reply at 1.

On August 22, 2023, the plaintiff also filed his cross-motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. See Pl.'s Mot. at 1. In response, the defendant filed its opposition on September 15, 2023, see Def.'s Opp'n at 1, and the plaintiff filed his reply in support of his cross-motion on September 22, 2023, see Pl.'s Reply at 1.

## II.     STANDARD OF REVIEW

### A.     Rule 59(e) Motion for Reconsideration

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "[twenty-eight] days after the entry of the judgment." Fed. R. Civ. P. 59(e). However, a Rule 59(e) motion "is not a second opportunity to present [an] argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier[,]" W.C. & A.N. Miller Cos. v. United States, 173 F.R.D. 1, 3 (D.D.C. 1997), and "need not be granted unless the [ ] [C]ourt finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice[,]" Anyanwutaku v. Moore, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998) (internal quotation marks omitted). Although motions under Rule 59(e) "lie within the discretion of the Court[,]" AARP v. U.S. Equal Emp. Opportunity Comm'n, 292 F. Supp. 3d 238, 241 (D.D.C. 2017) (citing Ciralsky v. Cent. Intel. Agency, 355 F.3d 661, 671 (D.C. Cir. 2004)), such motions are "disfavored[,]" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment, Niedermeier v. Off. of Max S. Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing Anyanwutaku, 151 F.3d at 1057-58).

4

### III.    ANALYSIS

As noted earlier, both the plaintiff and the defendant request that the Court reconsider its July 25, 2023 Memorandum Opinion and Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  See Def.'s Mot. at 1; Pl.'s Mot. at 1.  The Court will first address the defendant's motion for reconsideration, before considering the plaintiff's cross-motion for reconsideration.

### A.    The Defendant's Motion for Reconsideration

The defendant urges the Court to reconsider its July 25, 2023 Memorandum Opinion and Order because it contends that "[t]his case presents 'extraordinary circumstances' warranting relief," Def.'s Mot. at 1–2 (quoting Pfeiffer v. U.S. Dep't of Energy, No. 20-2924 (RBW), 2023 WL 4405158, at *2 (D.D.C. July 7, 2023)), and because the Court committed "clear error," id. at 1.  The defendant argues that "[t]he standard for clear error is satisfied here because the Court imposed the remedy of vacatur upon finding an appearance of partiality without applying the test that should have guided the Court's remedial discretion."  Id. at 3.  More specifically, the defendant claims that "[i]n Liljeberg [v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)], the Supreme Court instructed that '[t]here need not be a draconian remedy for every violation' of a statute addressing judicial impartiality and instead 'identified three factors relevant to the question [of] whether vacatur is appropriate.'"  Id. (quoting United States v. Microsoft Corp., 253 F.3d 34, 116 (D.C. Cir. 2001)).  And here, the defendant argues that "[t]he Liljeberg factors weigh heavily against vacatur[.]"  Id. at 4.[2]  Alternatively, the defendant requests "that, even if

---

[2] The defendant also argues that "[t]his case presents 'extraordinary circumstances' warranting relief because the judgment vacates the final, fully executed orders of an independent court system in a form not sought by the plaintiff, and, therefore, [was] not briefed by the parties, and vacatur is not warranted under the applicable framework."  Def.'s Mot. at 2 (internal citation omitted).  However, because the Court concludes that it did not clearly err for the reasons discussed infra, it sees no occasion to address this argument.  See Anyanwutaku, 151 F.3d
(continued . . .)

5

the Court declines to amend its vacatur order, the Court clarify that this case is remanded for further proceedings." Id. at 2.

In response, the plaintiff argues that "[f]ar from constituting clear error, the Court's ruling on the [recusal] issue was plainly correct." Pl.'s Opp'n at 2. More specifically, the plaintiff claims that "[v]acating the military judge's rulings from the time he secretly applied for a Justice Department job is in perfect sync with [the District of Columbia Circuit's decision in] Al-Nashiri." Id. The plaintiff also claims that the defendant's request for clarification is inappropriate because "it is far from clear that further proceedings would be constitutional, as the plaintiff has not been in the Army since his dishonorable discharge was executed." Id. at 5.

Because the defendant does not rely on an "intervening change of controlling law" or "the availability of new evidence," Anyanwutaku, 151 F.3d at 1057 (internal quotation marks omitted), as grounds for reconsideration, see generally Def.'s Mot.; Def.'s Reply, the Court will confine its Rule 59(e) analysis to the question of whether it needs to "correct a clear error or prevent manifest injustice[,]" Anyanwutaku, 151 F.3d at 1058 (internal quotation marks omitted). See id. at 1057–58 (stating that Rule 59(e) motions "need not be granted unless the [ ] [C]ourt finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). With respect to what amounts to "clear error" under Rule 59(e), courts have imposed a "very exacting standard." Bond v. U.S. Dep't of Justice, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting Lightfoot v. District of Columbia, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)). To qualify as clear error, the "final judgment must be 'dead wrong[.]'" Lardner v. Fed. Bureau of Investigation, 875 F. Supp. 2d 49,

---

(. . . continued)
at 1057–58 (stating that "Rule 59(e) motions 'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" (quoting Firestone, 76 F.3d at 1208)).

53 (D.D.C. 2012) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)); see also Smith v. Lynch, 115 F. Supp. 3d 5, 12 (D.D.C. 2015) ("[T]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" (quoting Parts & Elec. Motors, 866 F.2d at 233) (second and third alterations in original)). Thus, "[m]ere disagreement does not support a Rule 59(e) motion." Smith, 115 F. Supp. 3d at 12 (internal quotation marks omitted) (alteration in original).

The Court will first address the defendant's argument that the Court clearly erred in vacating the military judge's orders under the Liljeberg framework, before addressing the defendant's request for clarification.

1. **Whether the Court Clearly Erred in Vacating the Military Judge's Orders**

When a "petition seeks vacatur of judicial decisions, [the Court's] discretion is guided by the three Liljeberg factors: '[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." Al-Nashiri, 921 F.3d at 239 (quoting Liljeberg, 486 U.S. at 864). The Court will consider each factor in turn.

   a. **Whether There is a Risk of Injustice to the Parties in This Case**

The defendant claims that the first Liljeberg factor, "[t]he risk of injustice to the parties[,] counsels against vacatur[,]" Def.'s Mot. at 4, which was the remedy the Court provided to the plaintiff. In support of its position, the defendant first notes that "[n]either the death penalty nor a sentence of confinement is involved here." Id. Indeed, the defendant notes that the "plaintiff requested [that he receive] his sentence of a dishonorable discharge[]" that was imposed by the military judge. Id. Second, the defendant argues that the costs of vacatur are intolerably high as

7

"the court that entered the plaintiff's conviction and sentence does not currently exist." Id. at 4–5 (citing United States v. Denedo, 556 U.S. 904, 925 (2009) (Roberts, C.J., concurring in part) ("[A] court-martial is not a standing court . . . . When the object of its creation has been accomplished[,] it is dissolved.")). Accordingly, the defendant claims that a resumption of proceedings would "require[] expending significant military resources." Id. at 5 (internal quotation marks omitted).

In response, the plaintiff argues that "while the plaintiff was not charged capitally, and indeed, was not sentenced to confinement, the desertion charge was potentially capital[.]" Pl.'s Opp'n at 3. Furthermore, the plaintiff notes that he "was sentenced to a dishonorable discharge [and s]uch a discharge imposes a lifetime stigma." Id. Finally, the plaintiff claims that "[j]ust as the [District of Columbia] Court of Appeals did not deem the costs of granting mandamus 'intolerably high' in Al-Nashiri, it is hard to see at this point how the costs of this Court's decision are 'intolerable.'" Id. at 4.

With respect to the defendant's first argument, the Court notes that the District of Columbia Circuit has already "pointed out that [while] 'the deprivation of liberty under an invalid conviction is a grievous injury, [ ] a military discharge under other than honorable conditions imposes a lifelong disability of greater consequence for persons unlawfully convicted by courts martial.'" Homcy v. Resor, 455 F.2d 1345, 1349 (D.C. Cir. 1971) (quoting Kauffman v. Sec'y of the Air Force, 415 F.2d 991, 995 (D.C. Cir. 1969)). Indeed, "[i]n terms of its effects on reputation, the stigma experienced by the recipient of a discharge under other than honorable

conditions is very akin to the concept of infamy." Kauffman, 415 F.2d at 995. Accordingly, it follows then that the plaintiff's sentence imposes significant consequences.[3]

"On the other side of the ledger, the [defendant] warns that granting [the plaintiff's] petition would require relitigation of [these] proceedings, thus costing additional time and resources. But while the public unquestionably possesses . . . an interest in avoiding unwarranted delays in the administration of justice, surely the public's interest in efficient justice is no greater than its interest in impartial justice." Al-Nashiri, 921 F.3d at 240 (internal citation omitted) (internal quotation marks omitted). "Any institution that wields the government's power to deny life and liberty must do so fairly, as the public's ultimate objective is not in securing a conviction but in achieving a just outcome." Id. Thus, while the defendant is correct that vacating the military judge's orders and resetting the military proceedings to the pre-adjudication stage will "require[] expending significant military resources," Def.'s Mot. at 5 (internal quotation marks omitted), if the military decides to further prosecute this case, it offers no alternative means to achieving a just outcome in this matter. Indeed, under the defendant's approach, the plaintiff would be left with no recourse or relief to address the "appearance of partiality" in this matter. Bergdahl, 683 F. Supp. 3d at 71.

---

[3] The defendant emphasizes the fact that the plaintiff voluntarily chose to plead guilty. See Def.'s Mot. at 4. However, as the Court stated in its July 25, 2023 Memorandum Opinion, "there are various reasons why an individual might choose to plead guilty[.]" Bergdahl, 683 F. Supp. 3d at 58. "Here, as a preliminary matter, it is undisputed that the plaintiff had no actual knowledge or possession of the military judge's job application during his court-martial proceedings." Id. at 64. "In other words, based upon the military judge's representations during the court-martial proceedings, as well as his failure to disclose his job application, the plaintiff had no reason to know or even suspect that the military judge was applying for a job within the executive branch and that his impartiality could therefore be in question, considering the executive branch's involvement in this case." Id. at 66. Had the plaintiff known of the military judge's apparent conflict of interest, it is reasonable to expect that he may have chosen not to plead guilty. Moreover, the plaintiff faced a potential sentence of lifetime imprisonment on the desertion charge and "[t]he military judge [had] denied [all three of] the plaintiff's [ ] unlawful command influence [motions,]" id. at 40, which likely further incentivized the plaintiff's decision to plead guilty. Given these circumstances, the Court is unwilling to ascribe significant weight to the plaintiff's decision to plead guilty.

Instead, this Court—consistent with circuit precedent—adopted the approach taken in Al-Nashiri—viz., "vacatur of all orders entered by [the military judge] after" the date of his immigration judge application, Al-Nashiri, 921 F.3d at 240.  See Bergdahl, 683 F. Supp. 3d at 71.  "Additionally, because 'ordinary appellate review' on the merits cannot 'detect all of the ways that bias can influence a proceeding,'" Al-Nashiri, 921 F.3d at 240, the Court also vacated all decisions issued by the appellate military courts reviewing the military judge's orders and rulings.  See Bergdahl, 683 F. Supp. 3d at 71.  And, the defendant has failed to show how the Court's approach constituted clear error under the applicable circuit precedent.  See Lardner, 875 F. Supp. 2d at 53 (noting that "a final judgment must be 'dead wrong' to constitute clear error" (quoting Parts & Elec. Motors, 866 F.2d at 233)).  Accordingly, the first Liljeberg factor weighs in favor of vacatur.

      **b.**    **Whether There is a Risk that the Denial of Relief Will Produce Injustice in Other Cases**

Next, the defendant argues that "[t]he second Liljeberg factor, the 'risk that the denial of relief will produce injustice in other cases,' also weighs against vacatur."  Def.'s Mot. at 6 (quoting Al-Nashiri, 921 F.3d at 239).  While the defendant acknowledges that "restrictions against an appearance of partiality may generally prevent injustice in other cases," it claims that "this case's unique posture makes the possibility of injustice elsewhere remote."  Id.  More specifically, the defendant states that "the appearance of partiality arose only from the 'unique' circumstance that the then-President, 'the ultimate authority over the agency that would determine the military judge's appointment as an immigration judge, expressed during his candidacy and subsequently ratified after his election explicit condemnations of the plaintiff, reflecting his discernible interest in the outcome of the plaintiff's case.'"  Id. at 6–7 (quoting Bergdahl, 683 F. Supp. 3d at 69).  Accordingly, the defendant asserts that "[t]he unique

10

circumstances here undermine any suggestion that systematic considerations warrant vacatur." Id. at 7.

However, the defendant's argument appears to be premised upon an overly narrow reading of the Court's decision. As the Court explained in its July 25, 2023 Memorandum Opinion, "the ultimate duty in situations of potential judicial disqualification is imposed upon the judge . . . and the military judge here not only failed to disclose potential grounds for disqualification but also affirmatively misled the parties." Bergdahl, 683 F. Supp. 3d at 65. In other words, the Court took issue with the military judge's failure to disclose his employment prospects and his misrepresentations to the parties regarding those prospects. Neither of these rationales is premised upon the "case's unique posture," Def.'s Mot. at 6; instead, they enforce commonly understood notions of a judge's recusal obligations. See, e.g., R.C.M. 902(b)(5)(B) ("A military judge shall also disqualify himself or herself . . . [w]here the military judge . . . [knows he or she] ha[s] an interest, financial or otherwise, that could be substantially affected by the outcome of the proceeding[.]"). Moreover, the Court's concerns were further exacerbated by the fact that "the military judge in this case submitted a writing sample along with his application, consisting of an order in which he denied the plaintiff's unlawful-command-influence motion which was based upon former President Trump's statements, and ruled against the plaintiff—both actions that a reasonable person might view as serving the president's interests in the case and thus, 'creating the appearance of impropriety[.]'" Bergdahl, 683 F. Supp. 3d at 70–71 (quoting Liljeberg, 486 U.S. at 858).

"[A]s the Supreme Court explained in Liljeberg, [the judiciary's] 'willingness to enforce' disqualification 'may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly

11

disclose them when discovered.'" Al-Nashiri, 921 F.3d at 239 (quoting Liljeberg, 486 U.S. at 868). "And [the Court] cannot dismiss [the military judge's] lapse as a one-time aberration, as [the plaintiff's petition] is not the first meritorious request for recusal that [courts in this Circuit] ha[ve] considered with respect to military [ ] proceedings." Id. at 240; see generally id. (issuing a writ of mandamus vacating a military judge's orders due to the military judge's failure to disclose a disqualifying conflict arising from his application for an immigration judge position); In re Mohammad, 866 F.3d 473 (D.C. Cir. 2017) (issuing a writ of mandamus recusing a military judge for expressing an opinion about the accused's guilt). "It would seem, therefore, that some additional 'encourag[ement] . . . to more carefully examine possible grounds for disqualification,' would be especially 'appropriate under the circumstances.'" Al-Nashiri, 921 F.3d at 240 (internal citation omitted) (internal quotation marks omitted). Accordingly, the second Liljeberg factor also weighs in favor of vacatur.

### c. Whether There is a Risk of Undermining the Public's Confidence in the Judicial Process

Finally, the defendant argues "as to the third Liljeberg factor, in contrast to Al-Nashiri, there is no 'risk of undermining the public's confidence in the judicial process,' absent vacatur." Def.'s Mot. at 7 (quoting Al-Nashiri, 921 F.3d at 239). More specifically, the defendant claims that "even assuming the military judge's application created a situation in which his 'impartiality might reasonably be questioned,' the indicia of fairness at each step of the proceeding would supply ready and conclusive answers to any such questions." Id. at 8 (quoting Bergdahl, 683 F. Supp. 3d at 71).

In response, the plaintiff argues that the defendant's "claim falls flat[,]" as the military judge "not only engaged in conduct that gave rise to the appearance of a conflict of interest by applying for a Justice Department position, but affirmatively misled the plaintiff by claiming

12

falsely that his plan was simply to retire." Pl.'s Opp'n at 5.  Accordingly, the plaintiff asserts that "[v]acating the military judge's rulings from the time he secretly applied for a Justice Department job is in perfect sync with Al-Nashiri." Id. at 2.

As a starting point, "[t]he Court agrees with the plaintiff that the[] facts [in this case] 'all bear a striking resemblance to' the facts in Al-Nashiri[.]" Bergdahl, 683 F. Supp. 3d at 69.  And, the Al-Nashiri court found that such judicial conduct could risk undermining the public's confidence in the judicial process.  921 F.3d at 240 ("[W]e cannot permit an appearance of partiality to infect a system of justice that requires the most scrupulous conduct from its adjudicators, 'for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part.'" (quoting Williams v. Pennsylvania, 579 U.S. 1, 15 (2016))).

However, the defendant asserts that Al-Nashiri is distinguishable because "there is no risk that the court-martial proceedings [in this case] would remain 'under a cloud of illegitimacy' in the absence of vacatur." Def.'s Mot. at 6 (quoting Al-Nashiri, 921 F.3d at 240).  More specifically, the defendant asserts that considering "the Court's finding [on the plaintiff's unlawful command influence ('UCI') claims,] an impartial observer would not harbor significant doubts about the fairness of the proceedings[,]" which counsels against vacatur.  Id.

The defendant misunderstands the import of the Court's UCI decision.  As a threshold matter, the Court notes that it was evaluating the plaintiff's UCI claims under a highly deferential standard.  See, e.g., Bergdahl, 683 F. Supp. 3d at 60 ("Thus, according significant deference to the [military courts] as required, 'the Court finds no reason to disturb the [military courts'] decisions on the merits of [the plaintiff's unlawful command influence] claim[s]." (third and fourth alterations in original) (internal citation omitted)); id. at 55 ("The Court will 'assess[] the

13

aggravating and mitigating facts and circumstances[,]' as to each of these stages, keeping in mind the deference that must be afforded to the military courts." (alterations in original) (internal citation omitted) (quoting United States v. Horne, 82 M.J. 283, 287 (C.A.A.F. 2022))).  Stated otherwise, the Court did <u>not</u> hold that the military judge's rulings on the UCI issue were correct—<u>viz.</u>, the Court did not hold that there was no unlawful command influence in this matter, but only that vacatur on this ground was not warranted considering the constraint imposed on the Court by the highly deferential standard of review.[4]

Furthermore, even assuming <u>arguendo</u> that the military judge's rulings on the plaintiff's UCI claims were correct, that would not allay the Court's concerns regarding the military judge's apparent conflict.  Indeed, as the Court noted in its July 25, 2023 Memorandum Opinion, "[i]n reaching [its] conclusion, the Court [did] not mean to opine that there was actual bias in this case or that the military judge's 'orders were [not] the product of his considered and unbiased judgment, unmotivated by any improper considerations.'" <u>Id.</u> at 71 (fourth alteration in original) (quoting <u>Al-Nashiri</u>, 921 F.3d at 237)).  "Rather, the facts of this case present[ed] an appearance of partiality, and while '[a]ppearance may be all there is, [ ] that is enough[.]" <u>Id.</u> (second, third, and fourth alterations in original) (quoting <u>Microsoft</u>, 253 F.3d at 115).  Accordingly, the Court's rulings on the plaintiff's UCI claims did not bear on the Court's decision to order vacatur <u>on the basis of the plaintiff's recusal claims</u>.

---

[4] Indeed, in reaching this conclusion, the Court explicitly noted its concerns regarding former President Trump's and Senator McCain's comments about the plaintiff's court-martial proceedings.  <u>See, e.g.</u>, <u>Bergdahl</u>, 683 F. Supp. 3d at 60–61 ("Although it must reach this conclusion, the Court notes that what occurred in this case illustrates why individuals aspiring for public office and those achieving that objective should not express their desired verdict and punishment of individuals merely accused of committing criminal offenses.  They must be mindful that in the United States, individuals merely accused of committing crimes are presumed to be innocent until the prosecution has satisfied the high bar of proving guilty beyond a reasonable doubt regardless of the severity of the charged offense.  <u>So too must they appreciate the potential impact their comments may have on those who have to adjudicate the accused's culpability and the perception the public may have on the fairness of the process, which the credibility of the judicial system relies on in order for its decisions to be widely accepted.</u>" (emphasis added)).

Significant to the Court's analysis is the fact that the defendant does not contest the "appearance of bias" in its motion for reconsideration.  <u>See generally</u> Def.'s Mot.  Accordingly, consistent with <u>Al-Nashiri</u>, the Court cannot "permit [the] appearance of partiality [created in this case] to infect a system of justice that requires the most scrupulous conduct from its adjudicators, 'for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part.'"  <u>Al-Nashiri</u>, 921 F.3d at 240 (quoting <u>Williams</u>, 579 U.S. at 15).  Thus, the third <u>Liljeberg</u> factor also weighs in favor of vacatur.

Based on all of the foregoing reasons, the Court concludes that its order of vacatur was required pursuant to the <u>Liljeberg</u> factors.  Accordingly, the Court must deny the defendant's motion for reconsideration to the extent that it argues that the Court clearly erred in vacating the military judge's orders under the <u>Liljeberg</u> framework.

**2.  Whether the Court Should Clarify its July 25, 2023 Order**

Alternatively, the defendant requests "that, if the Court retains its Order of vacatur, the Court amend that Order to clarify its intention to remand the case for further proceedings."  Def.'s Mot. at 9.  More specifically, the defendant states that "[a]s the Court adopted the remedy ordered in <u>Al-Nashiri</u>—a case at the pretrial stage, which could and did resume thereafter—the defendant understands this Court's Order to permit a like result here."  <u>Id.</u> (internal citation omitted).  However, the defendant notes that "as the court-martial that entered the plaintiff's conviction and sentence was dissolved once the plaintiff's conviction became final, further proceedings consistent with the Court's opinion would have to be instigated by an appropriate authority."  <u>Id.</u>

15

In response, the plaintiff notes that "the Army has [not] made [ ] a decision" on whether to resume proceedings against him. Pl.'s Opp'n at 5. Accordingly, the plaintiff argues that "[i]t is inappropriate for the defendant to seek—or for the Court to grant—a ruling on a hypothetical situation in advance, especially because it is far from clear that further proceedings would be constitutional, as the plaintiff has not been in the Army since his dishonorable discharge was executed." Id.

As an initial matter, the Court notes that it may—of course—clarify its Order to indicate that military proceedings against the plaintiff may resume. See, e.g., Al-Nashiri, 921 F.3d at 240; see also Microsoft, 253 F.3d at 119 ("Remand[ing] the case . . . for reassignment to a different trial judge for further proceedings consistent with [the court's] opinion[,]" after finding the Liljeberg factors supported vacatur). And here, the Court sees no reason to bar further proceedings against the plaintiff given "the government's strong evidence in support of the plaintiff's charges, . . .; the seriousness of the charges . . .; [and] the extensive casualties that resulted from the plaintiff's actions[.]" Bergdahl, 683 F. Supp. 3d at 59–60. If the plaintiff wishes to dispute the constitutionality of any further military proceedings, that would be an issue for the military courts to address in the first instance. See Zivotofsky ex rel. Zivotofsky v. Clinton, 566 U.S. 189, 201 (2012) (holding that courts ordinarily do not "decide in the first instance issues not decided below" (quoting Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 470 (1999))). That, however, is a separate issue from the intended effect of the Court's Order. Accordingly, the Court will grant the defendant's request to clarify its July 25, 2023 Order to indicate that military proceedings against the plaintiff may resume. Therefore, nothing in the Court's July 25, 2023 Memorandum Opinion or Order should be construed as prohibiting future proceedings within the military justice system against the plaintiff.

The Court will next address the plaintiff's cross-motion for reconsideration.

## B.     The Plaintiff's Cross-Motion for Reconsideration

In his cross-motion for reconsideration, the plaintiff agrees that "[t]he Court correctly granted relief under [Al-Nashiri]." Pl.'s Mot. at 2. However, the plaintiff asserts that "the Court did not also consider the military judge's conduct as bearing on whether the government had, as required by settled unlawful command influence (UCI) jurisprudence, proved beyond a reasonable doubt that a member of the general public, aware of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceedings." Id. Accordingly, the plaintiff argues that the Court erred in "deal[ing] with the UCI and [the recusal] issues as if they were entirely separate." Pl.'s Reply at 1. Therefore, the plaintiff claims that "[g]iven the onerous burden of proof that [the] [United States Court of Appeals for the Armed Forces ("CAAF")] jurisprudence imposes on the prosecution, such a material change dictates a restriking of the balance and compels a ruling for the plaintiff on the UCI issue, and correspondingly broader relief." Pl.'s Mot. at 3. More specifically, he notes that the "CAAF's jurisprudence permits dismissal with prejudice for UCI, even in guilty-plea cases such as this[,]" id., the sanction which he asks the Court to impose.

In response, the defendant claims that "[t]he plaintiff's cross-motion asks [the] Court to revisit its July 25, 2023 Order . . . based on argument that [the] plaintiff lifts, in large part, directly from his summary judgment briefing." Def.'s Opp'n at 1. However, "[b]ecause a party may not use a motion under Federal Rule of Civil Procedure 59(e) to relitigate arguments previously made," the defendant asserts that "the Court should deny the plaintiff's cross motion for that reason alone." Id. Alternatively, the defendant states that the plaintiff does not "identify sufficient grounds for invoking the drastic remedy of dismissal with prejudice[.]" Id. at 2. The

17

Court will first address whether the plaintiff's cross-motion for reconsideration is permitted under Rule 59(e), before addressing the merits of the plaintiff's motion.

### 1. Whether the Plaintiff's Cross-Motion is Permitted Under Rule 59(e)

"Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters[.]" Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting Exxon Shipping v. Baker, 554 U.S. 471, 486 n.5 (2008)). Thus, a court should not consider arguments that simply "rehash[]" matters that were "squarely before the court" earlier in the proceedings. Pfeiffer, 2023 WL 4405158, at *5.

Here, the plaintiff's cross-motion for reconsideration attempts to relitigate an argument that the plaintiff already raised in his prior summary judgment briefing. See Pl.'s Mot. at 2 (quoting Pl.'s Opp'n to Def.'s Mot. to Dismiss and Mem. in Supp. of Cross-Mot. for Summ. J., ECF No. 18). Indeed, the crux of the plaintiff's cross-motion was presented as a heading in the plaintiff's summary judgment motion: "The military judge's concealed job application materially alters the evidence and precludes a finding that an informed member of the public would not harbor a significant doubt about the fairness of the proceedings." Pl.'s Opp'n to Def.'s Mot. to Dismiss and Mem. in Supp. of Cross-Mot. for Summ. J. at 43. The argument then concludes: "Whether [the] CAAF's UCI determination was right or . . . wrong when made, it cannot survive when the military judge's concealed job application is taken into account." Id. at 44. This is the same argument that the plaintiff now attempts to relitigate under Rule 59(e). See Pl.'s Mot. at 2 ("[T]he Court did not [ ] consider the military judge's conduct as bearing on whether the government had, as required by settled unlawful command influence (UCI) jurisprudence, proved beyond a reasonable doubt that a member of the general public, aware of all facts and circumstances, would not harbor a significant doubt about the fairness of the proceedings.").

This he cannot do.  See Leidos, 881 F.3d at 217; Pfeiffer, 2023 WL 4405158, at *5.  Accordingly, the Court concludes that the plaintiff's cross-motion for reconsideration is not permitted under Rule 59(e).

### 2. Whether the Court Should Grant the Plaintiff's Requested Relief

However, even if the plaintiff were not improperly attempting to relitigate arguments that he previously pursued, he would not be entitled to his requested relief—viz., dismissal with prejudice.  More specifically, even if the plaintiff were correct that the Court erred in "deal[ing] with the UCI and [the recusal] issues as if they were entirely separate[,]" Pl.'s Reply at 1, he fails to demonstrate why dismissal of this action with prejudice is appropriate.

The plaintiff claims that the "CAAF's jurisprudence permits dismissal with prejudice for UCI[.]"  Pl.'s Mot. at 3.  However, the CAAF has "long held that dismissal [with prejudice] is a drastic remedy and courts must look to see whether alternative remedies are available."  Lewis, 63 M.J. at 416.  And here, the Court's July 25, 2023 Memorandum Opinion and Order already cure the plaintiff's grievances by vacating "all orders and rulings issued by the military judge who presided over the plaintiff's court-martial as of October 16, 2017, and thereafter—which was the date when that military judge submitted his employment application for an immigration judge position—and '[ ] vacat[ing] all decisions issued by [the appellate military courts] reviewing such orders [and rulings].'"  Bergdahl, 683 F. Supp. 3d at 71.  Moreover, as discussed supra Section III.A.2, the Court sees no reason to bar further proceedings against the plaintiff given "the government's strong evidence in support of the plaintiff's charges, . . .; the seriousness of the charges . . .; [and] the extensive casualties that resulted from the plaintiff's actions[.]"  Id. at 59–60.  Accordingly, because (1) the plaintiff's cross-motion for

reconsideration is not permitted under Rule 59(e) and (2) the plaintiff's cross-motion for reconsideration lacks merit, the Court must deny the plaintiff's cross-motion for reconsideration.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendant's motion for reconsideration and deny the plaintiff's cross-motion for reconsideration.

**SO ORDERED** this 23rd day of May, 2024.[5]

REGGIE B. WALTON  
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.